
<div style="border:1px solid black;">

**EXHIBIT**
# A

</div>

## Service of Process Transmittal Summary

**TO:**     Laura Poole, President
Poole Fire Protection, Inc.
19910 W 161st St
Olathe, KS 66062-2700

**RE:**     **Process Served in Maine**

**FOR:**    POOLE FIRE PROTECTION, INC.  (Domestic State: KS)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | SAFESPILL SYSTEMS, LLC vs. POOLE FIRE PROTECTION, INC. |
| **CASE #:** | PORSCCV2026 |
| **NATURE OF ACTION:** | Environmental Litigation - Government Enforcement Action |
| **PROCESS SERVED ON:** | National Registered Agents, Inc., Augusta, ME |
| **DATE/METHOD OF SERVICE:** | By Process Server on 06/26/2026 at 12:14 |
| **JURISDICTION SERVED:** | Maine |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  Laura Poole  LPOOLE@POOLEFIRE.COM |
| | Email Notification,  Stephanie Poole  spoole@poolefire.com |
| **REGISTERED AGENT CONTACT:** | National Registered Agents, Inc.
3 Chase Avenue
Augusta, ME 04330
866-539-8692
CorporationTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

# PROCESS SERVER DELIVERY DETAILS

**Date:**                    Fri, Jun 26, 2026

**Server Name:**       Drop Service

| Entity Served | POOLE FIRE PROTECTION, INC. |
|---|---|
| Case Number | PORSCCV2026 |
| Jurisdiction | ME |

| Inserts | | |
|---|---|---|
| | | |



CONTAINS NONPUBLIC DIGITAL INFORMATION

## MAINE JUDICIAL BRANCH

Safespill Systems LLC _____ Plaintiff

V.

Poole Fire Protection, Inc. _____ Defendant
c/o National Registered Agents, Inc Address
3 Chase Avenue, Augusta, ME 04330

*"X" the court for filing:*
☒ Superior Court ☐ District Court
County: __Cumberland__
Location (Town): __Portland__
Docket No.: __PORSC-CV-2026-__

## SUMMONS
M. R. Civ. P. 4(d)

The Plaintiff has begun a lawsuit against you in the ☐ District ☒ Superior Court, which holds sessions at (*street address*) __205 Newbury Street__, in the Town/City of __Portland__, County of __Cumberland__, Maine. If you wish to oppose this lawsuit, you or your attorney **MUST PREPARE AND SERVE A WRITTEN ANSWER** to the attached Complaint **WITHIN 20 DAYS** from the day this Summons was served upon you. You or your attorney must serve your Answer by delivering a copy of it in person, by mail, or by email to the Plaintiff's attorney, whose name and address, including email address appear below, or by delivering a copy of it in person or by mail to the Plaintiff, if the Plaintiff's name and address appear below. You or your attorney must also file the original of your Answer with the court by mailing it to: Clerk of ☐ District ☒ Superior Court,

__205 Newbury Street, Ground Floor__ , __Portland__ , Maine __04101__

| (*Mailing Address*) | (*Town, City*) | (*Zip*) |

before, or within a reasonable time after, it is served. Court rules governing the preparation and service of Answers are found at www.courts.maine.gov.

> **IMPORTANT WARNING**: **If you fail to serve an answer within the time stated above, or if, after you answer, you fail to appear at any time the Court notifies you to do so, a judgment by default may be entered against you in your absence for the money damages or other relief demanded in the Complaint.** If this occurs, your employer may be ordered to pay part of your wages to the Plaintiff or your personal property, including bank accounts and your real estate may be taken to satisfy the judgment. **If you intend to oppose this lawsuit, do not fail to answer within the requested time.**

If you believe the plaintiff is not entitled to all or part of the claim set forth in the Complaint or if you believe you have a claim of your own against the Plaintiff, you should talk to a lawyer. If you feel you cannot afford to pay a fee to a lawyer, you may ask the clerk of court for information as to places where you may seek legal assistance.

Date (*mm/dd/yyyy*): __06/10/2026__

Daniel J. Murphy _____
9464
Bernstein Shur, PO Box 9729
Portland, ME 04104-5029
dmurphy@bernsteinshur.com

(☒ Attorney for) Plaintiff

Bar # (if applicable)

Address

Telephone/Email

(Seal of Court)

► _Jennifer Cyr_____
Clerk

> **ADA Notice:** The Maine Judicial Branch complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation contact the Court Access Coordinator, accessibility@courts.maine.gov, or a court clerk.
> **Language Services:** For language assistance and interpreters, contact a court clerk or interpreters@courts.maine.gov.



Barry McKenney
Chief Civil Deputy
Kennebec County
Sheriff's Office

626-26

**MAINE JUDICIAL BRANCH**

STATE OF MAINE

_____ County

On (*date*) _____, I served the Complaint (and Summons, and <u>Notice Regarding Electronic Service</u>) upon Defendant _____ by delivering a copy of the same at the following address:

_____

☐ to the above-named Defendant in hand.

☐ to (*name*) _____, a person of suitable age and discretion who was then residing at Defendant's usual residence.

☐ to (*name*) _____, who is authorized to receive service for Defendant.

☐ by (*describe other manner of service*): _____

_____

_____

Date (*mm/dd/yyyy*): _____    ▶ _____
                                              Deputy Sheriff Signature

                                           _____
                                              Printed Name

**Costs of Service:**                      _____
                                                     Agency

Service:      $ _____
Travel:       $ _____
Postage:      $ _____
Other:        $ _____

**Total**     $ _____

---

**ADA Notice:** The Maine Judicial Branch complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation contact the Court Access Coordinator, accessibility@courts.maine.gov, or a court clerk.
**Language Services:** For language assistance and interpreters, contact a court clerk or interpreters@courts.maine.gov.

---

*Complete the caption that applies to your case:*

☒ Safespill Systems, LLC _____ Plaintiff/Petitioner

V.

Poole Fire Protection, Inc. _____ Defendant/Respondent

_____ Other Party

**OR**

☐ IN RE: _____

*"X" the court for filing:*

☒ Superior Court ☐ District Court
☐ Unified Criminal Docket
☐ Supreme Judicial Court
County: Cumberland _____
Location (Town): Portland _____
Docket No.: PORSC-CV-2026-_____

## NOTICE REGARDING ELECTRONIC SERVICE

**NOTICE TO PARTIES:** All parties who are represented by an attorney are subject to the requirements of Electronic Service under Rule 5 of the Maine Rules of Civil Procedure, and Rule 49(d) of the Maine Rules of Unified Criminal Procedure.

**OPT IN:** *If you do not have an attorney,* papers that must be served on you <u>by other parties</u> in this case will be sent to you through the regular mail to your address of record. But <u>you have a choice</u> to allow other parties to serve you by sending documents electronically to your designated email address.

---

**PLEASE NOTE:** Any electronic service that you opt into applies only to papers served on you by other parties. It does not apply to documents that are sent to you by the court or documents that you file with the court.

**Even if you opt in to allow service by email, you can only send documents to the other parties by email if (1) they also opt in by completing this form, and (2) you can scan and create .pdf files of documents.**

---

<u>If you choose not to opt in, you do not need to do anything.</u> If you would like to receive papers electronically, you must meet the requirements set forth below. Check the appropriate box(es), sign, and mail or email the form to all other parties in the case. <u>Do not file this form with the Court.</u>

☐ **Electronic Receipt:** I choose to OPT IN to allow other parties to email me documents in this case. I have reviewed and meet all of the following electronic receipt requirements:
  ☐ I have a trusted email account and I have daily access to this account;
  ☐ I understand that **I will receive time-sensitive documents** through this email address including documents that may require me to take action in this case;
  ☐ This email account has available electronic storage of at least 1 gigabyte;
  ☐ This email account accepts emails with attachments of up to 10 megabytes; and
  ☐ I will be able to maintain this email account throughout this case.

Date (*mm/dd/yyyy*): _____

► _____
Signature of Self-Represented Party
*(You do not have to print and sign this form. Typing your name above after /s/ will be accepted as an electronic signature.)*

Print name: _____

Print email address: _____

---

**ADA Notice:** The Maine Judicial Branch complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation contact the Court Access Coordinator, <u>accessibility@courts.maine.gov</u>, or a court clerk.
**Language Services:** For language assistance and interpreters, contact a court clerk or <u>interpreters@courts.maine.gov</u>.

---

CONTAINS NONPUBLIC DIGITAL INFORMATION

**MAINE JUDICIAL BRANCH**

| | | |
|---|---|---|
| Safespill Systems LLC | Plaintiff | *"X" the court for filing:* |
| | | ☒ Superior Court ☐ District Court |
| V. | | County: Cumberland |
| | | Location (Town): Portland |
| Poole Fire Protection, Inc., et al. | Defendant | Docket No.: PORSC-CV-2026-239 |

### ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT, POST-JUDGMENT MOTION, OR NOTICE OF REGISTRATION OF FOREIGN JUDGMENT
M.R. Civ. P. 4(c)(1)

**Please sign the acknowledgment below and return this form to the sender** in the enclosed self-addressed stamped envelope so the sender will get it within 20 days from the day it was mailed to you. If you do not do this, you may be required by the Court to pay for the cost of having the sheriff serve the Summons and Complaint, or Post-Judgment Motion, or Notice of Registration of Foreign Judgment on you.

(If you are the party **sending** this document to serve the opposing party, **keep a copy of this form and a copy of the documents you are serving for your records**.)

### STATEMENT

By signing, dating and returning this form, I state that I received a copy of the Summons and Complaint, the Post-Judgment Motion, or Notice of Registration of Foreign Judgment with accompanying documents and that I understand the applicable statements below.

**AS TO CIVIL CASES,** I understand that if I do not file an answer to the Complaint or an objection to the Motion within the time limits established by statute or court rule and appear at all court conferences and hearings, then a judgment may be entered against me in my absence, and Plaintiff or the moving party may request that other orders be entered against me.

**AS TO INTITIAL FAMILY MATTERS (DIVORCE, PARENTAL RIGHTS AND RESPONSIBILITIES, PARENTAGE, GRANDPARENTS' VISITATION RIGHTS, JUDICIAL SEPARATION, ANNULMENT, AND TERMINATION OF PARENTAL RIGHTS UNDER 19-A M.R.S. § 1658) AND POST-JUDGMENT MOTIONS ARISING FROM THOSE ACTIONS,** I understand that:

- If I was served with a complaint or petition, I may file an answer, counterclaim, or response (forms FM-186, FM-187, FM-229, or FM-225 are available for this at the clerk's office or at www.courts.maine.gov) within 21 days of being served. If I am filing response to a petition for grandparent visitation rights or a complaint for de facto parentage, I must file an affidavit with my response;

---

**ADA Notice**: The Maine Judicial Branch complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation, contact the Court Access Coordinator, accessibility@courts.maine.gov, or a court clerk.
**Language Services:** For language assistance and interpreters, contact a court clerk or interpreters@courts.maine.gov.

CV-FM-036, Rev. 08/24               Page 1 of 2                www.courts.maine.gov
Acknowledgment of Receipt of Summons and
Complaint, Post-Judgment Motion, or Notice
of Foreign Judgment Registration

- If I was served with a post-judgment motion, I understand that I may file a cross-motion or objection within 21 days of being served, except that I may file a response to a motion to modify only child support within 30 days after being served;

- If I do not want to file an answer, counterclaim, response, cross-motion, or objection, but I do want to be heard on issues applicable to my case including parental rights and responsibilities, child support, spousal support, attorney fees, and the division of marital and non-marital property, I must (1) appear at all court conferences and hearings, and (2) file an Entry of Appearance (form FM-020) if I am not represented by an attorney; and

- If I do not enter an appearance or appear at court, judgment may be entered against me in my absence, and the plaintiff or petitioner may request that other orders be entered against me.

**AS TO NOTICES OF REGISTRATION OF FOREIGN JUDGMENT**, I have read the Notice of Registration (form CV-FM-110) and understand that if I want to contest the validity of the registered foreign judgment, I must request a hearing within the time specified on the Notice of Registration using the Request for Hearing Form (form CV-FM-203). I understand that if I do not contest the validity or enforcement of the registered foreign judgment, the court will confirm and enforce the judgment, including any alleged arrearages, and I will not be able to contest the judgment later.

Date (*mm/dd/yyyy*): ___7/21/26___          ▶ _____
                                                     Signature

Printed Name: Brett R. Leland
☒ Attorney for: Andrew William Poole
Bar No. (*if applicable*): 9828
Mailing Address: One Portland Square, 10th Floor
Portland, Maine 04101
Phone: ( 207 ) 253-4556
Email: bleland@verrill-law.com

**IMPORTANT WARNING: You are responsible for notifying the court clerk of any changes to your address and telephone number. If you do not inform the clerk of any changes to either your address or telephone number, it may not be possible for you to get notices of court conferences and hearings.**

**ADA Notice**: The Maine Judicial Branch complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation, contact the Court Access Coordinator, accessibility@courts.maine.gov, or a court clerk.
**Language Services**: For language assistance and interpreters, contact a court clerk or interpreters@courts.maine.gov.

CV-FM-036, Rev. 08/24                    Page 2 of 2                    www.courts.maine.gov
Acknowledgment of Receipt of Summons and
Complaint, Post-Judgment Motion, or Notice
of Foreign Judgment Registration

**MAINE JUDICIAL BRANCH**

| | | |
|---|---|---|
| Safespill Systems LLC | Plaintiff | *"X" the court for filing:* |
| | | ☒ Superior Court ☐ District Court |
| V. | | County: Cumberland |
| | | Location (Town): Portland |
| Poole Fire Protection, Inc., et al. | Defendant | Docket No.: PORSC-CV-2026-239 |

### ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT, POST-JUDGMENT MOTION, OR NOTICE OF REGISTRATION OF FOREIGN JUDGMENT
M.R. Civ. P. 4(c)(1)

**Please sign the acknowledgment below and return this form to the sender** in the enclosed self-addressed stamped envelope so the sender will get it within 20 days from the day it was mailed to you. If you do not do this, you may be required by the Court to pay for the cost of having the sheriff serve the Summons and Complaint, or Post-Judgment Motion, or Notice of Registration of Foreign Judgment on you.

(If you are the party **sending** this document to serve the opposing party, **keep a copy of this form and a copy of the documents you are serving for your records**.)

### STATEMENT

By signing, dating and returning this form, I state that I received a copy of the Summons and Complaint, the Post-Judgment Motion, or Notice of Registration of Foreign Judgment with accompanying documents and that I understand the applicable statements below.

**AS TO CIVIL CASES,** I understand that if I do not file an answer to the Complaint or an objection to the Motion within the time limits established by statute or court rule and appear at all court conferences and hearings, then a judgment may be entered against me in my absence, and Plaintiff or the moving party may request that other orders be entered against me.

**AS TO INTITIAL FAMILY MATTERS (DIVORCE, PARENTAL RIGHTS AND RESPONSIBILITIES, PARENTAGE, GRANDPARENTS' VISITATION RIGHTS, JUDICIAL SEPARATION, ANNULMENT, AND TERMINATION OF PARENTAL RIGHTS UNDER 19-A M.R.S. § 1658) AND POST-JUDGMENT MOTIONS ARISING FROM THOSE ACTIONS,** I understand that:

- If I was served with a complaint or petition, I may file an answer, counterclaim, or response (forms FM-186, FM-187, FM-229, or FM-225 are available for this at the clerk's office or at www.courts.maine.gov) within 21 days of being served. If I am filing response to a petition for grandparent visitation rights or a complaint for de facto parentage, I must file an affidavit with my response;

---

**ADA Notice**: The Maine Judicial Branch complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation, contact the Court Access Coordinator, accessibility@courts.maine.gov, or a court clerk.
**Language Services:** For language assistance and interpreters, contact a court clerk or interpreters@courts.maine.gov.

CV-FM-036, Rev. 08/24
Acknowledgment of Receipt of Summons and
Complaint, Post-Judgment Motion, or Notice
of Foreign Judgment Registration

Page 1 of 2

www.courts.maine.gov

- If I was served with a post-judgment motion, I understand that I may file a cross-motion or objection within 21 days of being served, except that I may file a response to a motion to modify only child support within 30 days after being served;

- If I do not want to file an answer, counterclaim, response, cross-motion, or objection, but I do want to be heard on issues applicable to my case including parental rights and responsibilities, child support, spousal support, attorney fees, and the division of marital and non-marital property, I must (1) appear at all court conferences and hearings, and (2) file an Entry of Appearance (form FM-020) if I am not represented by an attorney; and

- If I do not enter an appearance or appear at court, judgment may be entered against me in my absence, and the plaintiff or petitioner may request that other orders be entered against me.

**AS TO NOTICES OF REGISTRATION OF FOREIGN JUDGMENT**, I have read the Notice of Registration (form CV-FM-110) and understand that if I want to contest the validity of the registered foreign judgment, I must request a hearing within the time specified on the Notice of Registration using the Request for Hearing Form (form CV-FM-203). I understand that if I do not contest the validity or enforcement of the registered foreign judgment, the court will confirm and enforce the judgment, including any alleged arrearages, and I will not be able to contest the judgment later.

Date (*mm/dd/yyyy*): 7/21/26

▶ _____
Signature

Printed Name: Brett R. Leland
☒ Attorney for: John W. Poole, III
Bar No. (*if applicable*): 9828
Mailing Address: One Portland Square, 10th Floor
Portland, Maine 04101
Phone: ( 207 ) 253-4556
Email: bleland@verrill-law.com

**IMPORTANT WARNING**: **You are responsible for notifying the court clerk of any changes to your address and telephone number. If you do not inform the clerk of any changes to either your address or telephone number, it may not be possible for you to get notices of court conferences and hearings.**

**ADA Notice**: The Maine Judicial Branch complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation, contact the Court Access Coordinator, accessibility@courts.maine.gov, or a court clerk.
**Language Services**: For language assistance and interpreters, contact a court clerk or interpreters@courts.maine.gov.

CV-FM-036, Rev. 08/24                    Page 2 of 2                    www.courts.maine.gov
Acknowledgment of Receipt of Summons and
Complaint, Post-Judgment Motion, or Notice
of Foreign Judgment Registration



# ATTENTION

IT IS IMPORTANT
YOU CONTACT THE
**MIAMI COUNTY
SHERIFF'S OFFICE**

Date: 6/20/26

Deputy: Any

Telephone: **913-294-4444**

Reference: Civil Paper for
Nicholas B

**Miami County Sheriff's Office
209 S. Pearl
Paola, Kansas 66071**

CONTAINS NONPUBLIC DIGITAL INFORMATION

**MAINE JUDICIAL BRANCH**



| | | |
|---|---|---|
| Safespill Systems LLC | Plaintiff | *"X" the court for filing:* |
| | | [X] Superior Court [ ] District Court |
| V. | | County: Cumberland |
| Nicholas Brondum | Defendant | Location (Town): Portland |
| 1309 N 2nd Street E | Address | Docket No.: PORSC-CV-2026- |
| Louisburg, Kansas 66053 | | |

**SUMMONS**
M. R. Civ. P. 4(d)

The Plaintiff has begun a lawsuit against you in the [ ] District [xx] Superior Court, which holds sessions at (*street address*) 205 Newbury Street , in the Town/City of Portland , County of Cumberland , Maine. If you wish to oppose this lawsuit, you or your attorney **MUST PREPARE AND SERVE A WRITTEN ANSWER** to the attached Complaint **WITHIN 20 DAYS** from the day this Summons was served upon you. You or your attorney must serve your Answer by delivering a copy of it in person, by mail, or by email to the Plaintiff's attorney, whose name and address, including email address appear below, or by delivering a copy of it in person or by mail to the Plaintiff, if the Plaintiff's name and address appear below. You or your attorney must also file the original of your Answer with the court by mailing it to: Clerk of [ ] District [xx] Superior Court,

205 Newbury Street, Ground Floor , Portland , Maine 04101

|  (Mailing Address) | (Town, City) | (Zip) |
|---|---|---|

before, or within a reasonable time after, it is served. Court rules governing the preparation and service of Answers are found at www.courts.maine.gov.

---

**IMPORTANT WARNING**: If you fail to serve an answer within the time stated above, or if, after you answer, you fail to appear at any time the Court notifies you to do so, a judgment by default may be entered against you in your absence for the money damages or other relief demanded in the Complaint. If this occurs, your employer may be ordered to pay part of your wages to the Plaintiff or your personal property, including bank accounts and your real estate may be taken to satisfy the judgment. **If you intend to oppose this lawsuit, do not fail to answer within the requested time.**

---

If you believe the plaintiff is not entitled to all or part of the claim set forth in the Complaint or if you believe you have a claim of your own against the Plaintiff, you should talk to a lawyer. If you feel you cannot afford to pay a fee to a lawyer, you may ask the clerk of court for information as to places where you may seek legal assistance.

Date (*mm/dd/yyyy*): 06/10/2026

Daniel J. Murphy               ([X] Attorney for) Plaintiff          (Seal of Court)
9464                                    Bar # (if applicable)

Bernstein Shur, PO Box 9729   Address
Portland, ME 04104-5029
dmurphy@bernsteinshur.com     Telephone/Email          ►  *Jennifer Cyr*
                                                                                      Clerk

---

**ADA Notice:** The Maine Judicial Branch complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation contact the Court Access Coordinator, accessibility@courts.maine.gov, or a court clerk.
**Language Services:** For language assistance and interpreters, contact a court clerk or interpreters@courts.maine.gov.

---

CONTAINS NONPUBLIC DIGITAL INFORMATION **MAINE JUDICIAL BRANCH**

*Complete the caption that applies to your case:*

☒ Safespill Systems, LLC _____ Plaintiff/Petitioner

V.

Nicholas Brondum _____ Defendant/Respondent

_____ Other Party

*"X" the court for filing:*

☒ Superior Court ☐ District Court
☐ Unified Criminal Docket
☐ Supreme Judicial Court
County: Cumberland
Location (Town):Portland _____
Docket No.: PORSC-CV-2026- _____

**OR**

☐ IN RE: _____

## NOTICE REGARDING ELECTRONIC SERVICE

**NOTICE TO PARTIES:** All parties who are represented by an attorney are subject to the requirements of Electronic Service under Rule 5 of the Maine Rules of Civil Procedure, and Rule 49(d) of the Maine Rules of Unified Criminal Procedure.

**OPT IN:** *If you do not have an attorney,* papers that must be served on you <u>by other parties</u> in this case will be sent to you through the regular mail to your address of record. But <u>**you have a choice**</u> to allow other parties to serve you by sending documents electronically to your designated email address.

> **PLEASE NOTE:** Any electronic service that you opt into applies only to papers served on you by other parties. It does not apply to documents that are sent to you by the court or documents that you file with the court.
>
> **Even if you opt in to allow service by email, you can only send documents to the other parties by email if (1) they also opt in by completing this form, and (2) you can scan and create .pdf files of documents.**

<u>If you choose not to opt in, you do not need to do anything.</u> If you would like to receive papers electronically, you must meet the requirements set forth below. Check the appropriate box(es), sign, and mail or email the form to all other parties in the case. <u>Do not file this form with the Court.</u>

☐ **Electronic Receipt:** I choose to OPT IN to allow other parties to email me documents in this case. I have reviewed and meet all of the following electronic receipt requirements:

    ☐ I have a trusted email account and I have daily access to this account;

    ☐ I understand that I **will receive time-sensitive documents** through this email address including documents that may require me to take action in this case;

    ☐ This email account has available electronic storage of at least 1 gigabyte;

    ☐ This email account accepts emails with attachments of up to 10 megabytes; and

    ☐ I will be able to maintain this email account throughout this case.

Date *(mm/dd/yyyy):* _____

► _____
Signature of Self-Represented Party
*(You do not have to print and sign this form. Typing your name above after /s/ will be accepted as an electronic signature.)*

Print name: _____

Print email address: _____

> **ADA Notice:** The Maine Judicial Branch complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation contact the Court Access Coordinator, <u>accessibility@courts.maine.gov</u>, or a court clerk.
> **Language Services:** For language assistance and interpreters, contact a court clerk or <u>interpreters@courts.maine.gov</u>.

SAFESPILL SYSTEMS, LLC, )
 )
 Plaintiff, )
 )
v. )
 ) **COMPLAINT**
POOLE FIRE PROTECTION, INC., )
JOHN W. POOLE, III, P.E., )
NICHOLAS BRONDUM, and )
ANDREW WILLIAM POOLE, P.E., )
 )
 Defendants. )

Plaintiff Safespill Systems, LLC ("Safespill"), by and through its undersigned counsel, brings this civil action for money damages, and for such other and further relief as this Honorable Court may deem just and equitable, against Defendants Poole Fire Protection, Inc. ("PFP"), John W. Poole, III, P.E., Nicholas Brondum, and Andrew William Poole, P.E. (collectively, the "Poole Defendants"), and in support hereof states the following:

1. Plaintiff Safespill is a Texas limited liability company with its principal place of business in Harris County, Texas.

2. Defendant PFP is a Kansas corporation with its principal place of business located at 19910 West 161st Street, Olathe, Kansas 66062.

3. Defendant John W. ("Jack") Poole, III, P.E. is upon information and belief the principal owner of PFP, serves as its chief executive and/or chief operating officer, and substantially directs PFP's primary business strategy and tactics. Jack Poole holds a Professional Engineer License (No. 12520) issued by the State of Maine.

4. Defendant Nicholas Brondum is a fire protection engineer employed by PFP.

5. Defendant Andrew William Poole, P.E., is employed by PFP as its Director of Engineering. He holds a Professional Engineer License (No. 164730) issued by the State of Maine.

## I. JURISDICTION AND VENUE

6. Personal jurisdiction is proper because (i) Defendants have continuous and systematic contacts with the State of Maine, (ii) Defendants committed torts within the State of Maine, (iii) Defendants' torts caused injuries within the State of Maine, and (iv) Defendants purposefully availed themselves as to the privilege of conducting business in the State of Maine by virtue of their contacts and activities with the State.

7. Actual ascertainable damages exceed fourteen million ($14,000,000) dollars.

8. Venue is proper in the State of Maine because all or a substantial part of the acts or omissions giving rise to Safespill's claim occurred in the State of Maine.

## II. INTRODUCTION

9. Competition is the backbone of this country's economic might. When competitors labor honestly and in earnest to out-innovate, out-sell, out-work, and out-perform their competition, their success, should it come, is well and truly earned.

10. Honesty and integrity, professionalism, compliance with law, the avoidance of conflicts of interest, conducting business in a truthful manner, providing accurate and reasonably complete information to the public, avoiding deceitful practices, and always maintaining an unwavering concern for public safety are the hallmarks of ethical commerce.

11. In addition to obliging these principles as members of the business community at large, those who practice as licensed engineers are also bound by that profession's various codes of ethics with mandates that engineers hold paramount the safety, health, and welfare of the public, act with high standards of honesty, impartiality, and integrity, while avoiding conflicts of interest.

12. When engineers abandon the citadel of professionalism and ethical conduct; when they put profit or expediency ahead of integrity or accuracy; when they look out for themselves instead of public safety and welfare; the transgression is inexcusable.

13. Nevertheless, questionable business practices can be an effective business strategy, unless and until these practices and those who would ply them are called to account.

14. Safespill is a fire protection and suppression system design and installation company. Its work focuses on aircraft hangars in which maintenance, repair and overhaul ("MRO") operations take place. MRO hangars are considered high-hazard fire environments due to the presence of jet fuel, oxygen systems, flammable solvents, and "hot work" like welding, which can serve as a source of ignition. These facilities may store multiple aircraft holding thousands of pounds of fuel, which can create catastrophic fire risks, necessitating stringent fire protection systems.

15. Due to the size, scale and complexity of MRO aircraft hangar fire protection systems, significant costs are involved for their design, manufacture, installation, and maintenance. These are expensive systems.

3

16. The authoritative code setting the industry standard on fire protection in aircraft hangars is published by the National Fire Protection Association (NFPA).

17. NFPA 409 (2022) states that a fire protection approach to an aircraft hangar "shall [i.e. must] be developed" using either a prescriptive-based approach in accordance with the standard, or a fire risk-based approach.

18. This case involves NFPA 409 (2022) as it applies to the aircraft hangars at Brunswick Executive Airport located in Brunswick, Maine.

19. Brunswick Executive Airport ("BXM") is a public use general aviation airport located 2.3 miles southeast of the central business district of Brunswick, Maine. The Midcoast Regional Redevelopment Authority owns it.

20. The Midcoast Regional Redevelopment Authority ("MRRA") is a public municipal corporation by state law established by the Maine State Legislature to facilitate the rapid development of the properties within the geographic boundaries of BXM, the former Brunswick Naval Air Station. MRRA's mission is tied to regional economic development, including aviation jobs and tenant activity. Funding for these projects comes from state and municipal sources. There are five aircraft hangars at BXM. These are leased to a variety of tenants supporting aviation and driving economic activity through MRO operations as well as some lighter uses.

21. In 2024, Defendants PFP, Jack Poole, III, P.E., Nicholas Brondum and Andrew William Poole, P.E. were hired to perform a risk-based approach to fire protection involving the hangars at BXM.

4

22. As is discussed in more detail below, the approach used by the PFP Defendants failed to perform a proper NFPA 409 risk assessment, including the following actions and omissions: failure to consider all available system options; unreasonably classifying the hangars as low-risk; and intentionally recommending the least expensive and assertedly least intrusive solution, which precisely aligned with the mission of its client MRRA to promote regional economic activity, by declaring its recommendation to be safe when it was not.

23. The Defendants promoted a seductive business plan akin to stating: "hire us to assess your aircraft hangar fire risk and we will save you time and money", despite this plan lulling the BXM community into a false sense of security concerning fire safety protections and systems.

24. Through deliberate, highly questionable business practices, the Defendants cherry-picked their way through asserted full compliance with NFPA 409 causing MRRA to choose an easy and relatively inexpensive fire protection solution which it believed to be the right choice, when in fact the Defendants' proposal was missing critical information.

25. The Defendants' expedient, cost-minimizing strategy cost Plaintiff a multi-hangar fire suppression and protection contract (and cost BXM the fire protection it requires to operate safely).

26. This lawsuit seeks to call the Defendants to account for their intentional, tortious business practices involving aircraft hangar fire suppression systems at BXM.

## III. FACTS

27.     The National Fire Protection Association's ("NFPA") Standards on Aircraft Hangars, NFPA 409 (2022), governs suppression systems used to combat fuel fires in aircraft hangars.  Until recently, the NFPA required foam suppression systems, such as Aqueous Film Forming Foam ("AFFFs"), in all hangars.  AFFF contains PFAS (Per- and Polyfluoroalkyl Substances). PFAS are so-called "forever chemicals" made popular for their firefighting properties, among many other uses, but which are now widely accepted as deleterious because they do not break down, they accumulate in the environment generally and in living things, and are linked to serious health problems like cancers, liver damage, thyroid disease, immune suppression, and developmental problems.

28.     In 2022, NFPA removed such requirements after industry studies revealed the health, safety, and environmental impacts associated with foam suppression systems and PFAS.

29.     The 2022 edition of NFPA 409 specifically endorses Ignitable Liquid Drainage Floor Assemblies ("ILDFAs") as an alternative to foam suppression systems. ILDFAs are not only environmentally safer than the traditional hangar fire suppression systems used in the aviation industry but also lessen the risk of damage to aircraft and harm to personnel.

30.     Safespill designs and manufactures ILDFAs for military and commercial aircraft hangar applications.

31.     There are also PFAS-free aqueous foam fire suppression systems available for aircraft hangars.

6

32. The 2022 NFPA allows for alternative strategies to develop a fire protection approach for hangars: (1) a prescriptive-based approach[1] in accordance with standard 409; and (2) a fire risk-based approach. Per NFPA 4.1, "[t]he fire protection approach for aircraft hangars shall be permitted to be determined based on an evaluation of the fire risks, hazards associated with the site, services provided, the business continuity planning, and disaster restoration capabilities of the aircraft hangar specific to the site".

33. Per NFPA 409, a fire risk-based approach mandates consideration be given to a minimum of twenty-one (21) specified factors to identify an appropriate hangar fire suppression system; consideration shall extend to available system options, including non-PFAS foam-water deluge systems and ILDFAs; and shall be documented and shall be approved by the authority having jurisdiction.

34. In this way, NFPA 409 offers relief from undesirable PFAS-based aqueous foam suppression systems on the principle that high fire hazard risks can be addressed by non-PFAS based aqueous foam systems, or ILDFAs; and for demonstrably and acceptably low fire risk hangars, an automatic water sprinkler may suffice.

35. NFPA 409 classifies aircraft hangars by size, construction, and fire-risk associated with their use. In simplified terms, MRO hangars are high-risk, requiring a foam-water deluge system or an ILDFA due to their fire-risk assessment.

36. A low fire hazard is associated with fixed-base operators ("FBOs"), with hangars used for overnight parking or light maintenance handling only. These facilities have a low fire risk due to their limited activity involving exposure of flammable liquids.

---

[1] That is to say, an approved aqueous foam suppression system or an ILDFA.

7

They are essentially parking garages for aircraft and thus may not warrant the complexity and cost of a specialized fire suppression system. Per NFPA 409 an automatic water sprinkler system may suffice as the primary means of fire suppression in these types of facilities.

37. Contrast these parking garage-like with MRO hangars in which hazardous operations take place such as work on fuel system components, part replacements, and routine maintenance procedures that can involve residual fuel. These activities do not present a sufficiently low hazard to dispense with a full fire suppression system. They are hence required to have a prescriptive system.

38. The Defendants are engineers who promote their ability to conduct NFPA 409 (2022) fire risk assessments of municipal, private, and military aircraft hangars.

39. NFPA 409 (2022) fire risk assessments are required to consider, and the engineer is required to discuss with the authority having jurisdiction, at least twenty-one defined factors when assessing whether a prescriptive or other fire suppression system would be compliant. Among these factors is the use of the hangar (actual and foreseeable).

40. In August 2024, an unintended discharge of aqueous film forming foam ("AFFF") contained within a fire suppression system occurred at Hangar 4 at BXM. The discharge necessitated a difficult and costly remediation.

41. In September 2024, following the discharge of AFFF in Hangar 4, the Town of Brunswick Town Council adopted a "Resolution to Protect the Brunswick Community and the Environment from the Use of AFFF" due to the presence of PFAS. The objective was to

8

rid BXM's hangars of AFFF, leaving open the question of a replacement fire suppression approach.

42. In February 2025, MRRA, which leased BXM Hangar 4 from the United States Navy, engaged Defendant PFP to inspect/evaluate all BXM hangars for a (1) root cause analysis, (2) Fire Risk Assessment, and (3) interim monitoring/risk management plan.

43. The Defendants performed these three tasks, delivering their work product to MRRA. A copy of PFP's February 5, 2025 "Interim Fire Protection Solutions" letter for Hangars 4, 5 and 6 ("Interim Solutions") is attached hereto as Exhibit "A".

44. Despite the hazard profile associated with BXM's Hangars 4, 5 and 6, which are Group I hangars due to their size, thus requiring a prescriptive fire suppression system, the Defendants' Interim Study allowed for the existing AFFF systems to be deactivated and assessed fire risk as low such that existing MRO operations can continue.

45. The Defendants concluded "that the existing AFFF systems [at BXM] can remain disarmed or disabled" with fire suppression to be dependent upon an overhead water sprinkler system along with wheeled and/or hand carried fire extinguishers. See Ex. A, at 3.

46. The Defendants' risk assessment did not document and discuss with MRRA foreseeable uses of Hangars 4, 5 and 6; did not document and discuss with MRRA prescriptive fire suppression solutions; did not document and discuss the life safety of emergency responders, the general public, and occupants of aircraft storage and service areas and adjacent spaces; and omitted consideration of other risk management elements as well, in a deliberate manner so as not to comply with NFPA 409, but to render for its

9

client MRRA a quick and inexpensive solution that imposed the lightest fiscal and operational burden possible on MRRA's economic development agenda.

47. In its sealed Root Cause Analysis for MRRA, the Defendants concluded that: (a) the AFFF system in Hangar 4 had activated without the presence of a fire; that (b) the most probable cause was an internal electronic fault of unknown mechanism ("The *most likely* source of the fault ... is Module 22 ... I recommend further forensic testing on that module if a deeper understanding as to how, precisely, that equipment failed is desired") (emphasis added) (*Id.*); (c) the failure mode was non-deterministic and unresolved (*Id.*); and, (d) prior unwanted discharges had occurred from this system.

48. The Defendants had explicit knowledge of unresolved life-safety system instability when their interim solutions were sealed.

49. Despite their knowledge of unresolved life-safety system instability, the Defendants communicated to Eric Perkins, Property Manager for MRRA, by way of its February 5, 2025, Interim Solutions, its sealed opinions that MRRA:

- disable National Fire Protection Association (NFPA) Code Section 409-compliant ignitable-liquid fire suppression systems;

- convert protection to water-only sprinkler configurations;

- rely on administrative controls, alarms, and manual firefighting;

- allow continued aircraft maintenance, service, repair, and storage without adequate fire risk protection.

50. No formal performance-based equivalency analysis demonstrating safety equivalence to NFPA 409 requirements was provided to MRRA in the Interim Solutions

Report, despite Defendants' purported compliance with NFPA 409. No formal plan of communication to the several tenants of Hangars 4, 5 and 6 was developed to ensure that only low fire hazard operations and activities take place. There is no mention of compliance with contractual property and casualty fire insurance requirements for landlord or tenants, as is required by NFPA 409. There is no discussion of prescriptive alternatives to AFFF-grade suppression systems such as ILDFAs. Instead, the Defendants used their professional seals as a fiat permitting their client to do less and to spend less— despite a fire hazard that was no less urgent and despite the requirements of NFPA 409.

51.     PFP knew that MRRA had no capital budget for immediate system replacement. And, while this important consideration is unmentioned across PFP's work product for MRRA, PFP's solution that MRRA disable the NFPA 409-compliant ignitable-liquid fire suppression systems aligns fully with the lowest-cost path available, and with the least interruption of economic activity and employment at BXM and in the community that supports it.

52.     This was not mere happenstance. Rather, it was the fulfillment of a business strategy to seal the client's economic development agenda and fiscal pressures as opposed to objectively analyzing the client's property/casualty and life-safety risk, without disclosing this tradeoff to the client. As a result, the client, MRRA, was intentionally misled. It was led to believe that it had fulfilled its safety obligations, including under NFPA 409, by unwittingly procuring welcome, if unsound, news of minimal interruption of BXM's operations rather than unwelcome, yet professionally sound, news of inconvenience and downtime. Public records state: "In October 2024, MRRA received a ... quote ... to install a

11

floor system in the hangars that would eliminate the need for a foam system. The estimated cost is $21 million, and MRRA is exploring options for funding."

53. Operational downtime and cost constraints do not excuse reduced life-safety protection. The Defendants in their Interim Solutions Report intentionally failed to disclose to MRRA that its "solutions" were based on an incomplete risk assessment. Their assessment was required to comply with NFPA 409 for Group I Hangars, irrespective of its client's business plan or financial constraints. Hypothetically speaking, if MRRA had pressured the Defendants to assess risk in such a way that it would minimally impact BXM operations, the Defendants should have refused to seal their work, rather than expediently side-stepping the requirements of NFPA 409.

54. BXM Hangars 4, 5 and 6 support active general aviation and flight training operations involving multiple small aircraft and aviation gasoline. And one must bear in mind that the current tenants and/or their operations have and shall continue to change, involving operations with an increased fire hazard profile. Defendants' Interim Solutions nevertheless rely on asserted or assumed administrative controls and idealized human behavior without conditioning occupancy on enforceable training or supervision.

55. The Defendants all but ignore the mixed-use aviation tenants and active maintenance operations in the BXM hangars in the Interim Solutions Report, and they ignore the reality that there are no discernable controls over tenant activity.

56. Engineering standards require design for foreseeable use, misuse, and human error. Compliance with this duty is nowhere to be found in the Defendants' Interim Solutions, signed, sealed, and delivered to MRRA.

57.    A licensed fire protection contractor, Eastern Fire, withdrew from the project citing safety and liability concerns with the interim strategy. Peer refusal to support the design is relevant evidence that the proposed solutions fell below the accepted standard of care.

58.    The Defendants knew that the lure of a non-intrusive and readily funded fire safety solution would evoke in MRRA a sense of uncritical complacency and reliance on the risk assessment, damping its scrutiny of NFPA 409's prescriptive 21-point analysis in anticipation of the "risk assessment" that any consumer of fire suppression systems would welcome most: a result-oriented determination that the fire risk is low and therefore, the fire protection solution will be simple, inexpensive, and easy to implement.

59.    There are prior documented incidents of Defendant PFP using risk-based or interim justifications to downgrade prescriptive NFPA 409 protections. The BXM incident demonstrates an intentional and tortious competitive strategic pattern rather than an isolated lapse.

60.    The Defendants misguide potential customers throughout the industry, as they misguided MRRA, about the interplay between Sections 4.1 and 4.2 of NFPA 409 (2022) and the intended prescriptive nature of fire suppression systems for Group I Hangars.  The Defendants make only a passing reference to ILDFAs and certainly do not explain that ILDFAs are an acceptable and superior alternative to AFFFs and high expansion foam systems.  The Defendants even misrepresent in their own risk assessment the input provided by key stakeholders.  These representations tie back to the Defendants' business plan.  They drive client decision making as to whether to hire them for a risk

13

assessment with the lure of a simple, quick, and affordable outcome. Defendants exploit prospective client concerns that fire safety would likely require restricted operations or shutdown until compliant protection is in place, which would directly impact tenants, jobs and regional economic activity, not to mention the pressure to secure funding.

61. It is more effective to tell prospective clients what they want to hear, i.e., that an affordable water sprinkler system may be all that they need, rather than addressing the full requirements and risks addressed under NFPA 409.

62. Plaintiff submitted in or about October 2024 a proposal to MRRA for ILDFAs for BXM Hangars 4, 5 and 6. The proposal was completely NFPA 409 compliant. MRRA began to explore funding for an ILDFA solution. However, the Defendants' erroneous, expedient, and intentionally misleading fire risk assessment and proposed solutions for MRRA in effect killed Plaintiff's proposal for MRRA.

## IV. FIRST CAUSE OF ACTION – INTENTIONAL TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE OR ECONOMIC EXPECTANCY

63. In the aftermath of the unintended discharge of aqueous foam in Hangar 4 at BXM, as stewards of the facilities and environment at BXM, MRRA undertook to develop and implement a plan for the removal and disposal of all PFAS-based AFFF from BXM as soon as possible.

64. In October 2024, MRRA received a presentation and informal quote from Safespill to install a floor system in BXM Hangars 4, 5 and 6 that would eliminate the need for a foam system. Public records note "the estimated cost is $21 million, and MRRA is exploring options for funding".

65. The actual proposal involved a $28 million spend, including maintenance and other recurring costs.

66. The opportunity to provide a floor system to MRRA for BXM Hangars 4, 5, and 6 represented a prospective economic advantage for Safespill worth no less than $14 million.

67. Plaintiff Safespill had a valid economic expectancy based on the aforesaid prospective business relationship and the needs of MRRA to obtain full and complete compliance under NFPA 409.

68. Defendants had actual knowledge of Plaintiff's prospective business relationship with MRRA and opportunity for such economic advantage.

69. Defendants secured a contract with MRRA to provide, among other services, Interim Fire Protection Solutions and a Fire Risk Assessment.

70. Defendants intentionally interfered with Safespill's economic advantage by falsely representing to MRRA that the solutions offered to MRRA were compliant with NFPA 409, when in fact, they are incomplete and misleading.

71. As a direct and proximate result of the Defendants' intentionally false, incomplete and thus misleading representations to MRRA that it was receiving an assessment and solutions consistent with the spirit and letter of NFPA, when these statements were knowingly false, MRRA opted not to procure the ILDFAs from Plaintiff. Instead, MRRA replaced its PFAS-based AFFF systems with water sprinklers.

72. Based on Defendants' tortious conduct, including intentional interference, Plaintiff has suffered damages totaling no less than $14 million.

WHEREFORE, Plaintiff Safespill Systems, LLC seeks judgment in its favor and against Defendant Poole Fire Protection, Inc., John W. Poole, III, P.E., Andrew William Poole, P.E., and Nicholas Brondum, jointly and severally, in an amount to be determined at trial together with interest and such other and further relief as the Court may deem just and equitable.

DATED: June 1, 2026

Respectfully submitted,

*Jonathan S. Ziss*
Jonathan S. Ziss, (*pro hac vice forthcoming*)
**GOLDBERG SEGALLA LLP**
1700 Market Street, Suite 3232
Philadelphia, PA 19103-3907
(267) 519-6820
jziss@goldbergsegalla.com

*/s/ Daniel J. Murphy*
Daniel J. Murphy, Maine Bar No. 9464
**BERNSTEIN SHUR**
100 Middle Street, Second Floor
P.O. Box 9729
Portland, Maine 04104-5029
(207) 228-7120
dmurphy@bernsteinshur.com

*Attorneys for Plaintiff Safespill Systems, LLC*

**EXHIBIT**
A



**innovative leader**
**trusted partner**

19910 West 161st Street
Olathe, Kansas 66062
913.829.8650 office
913.829.8690 fax
www.poolefire.com

February 5, 2025

Eric Perkins
Property Manager
Midcoast Regional Redevelopment Authority (MRRA)
15 Terminal Road, Brunswick, Maine 04011

RE:  Interim Fire Protection Solutions
Hangar 4, 5, & 6
Brunswick Executive Airport, Brunswick, ME

Dear Mr. Perkins,

The intent and focus of this letter are to document the proposed temporary interim fire protection solutions to allow now-existing aircraft maintenance, service, repair operations, and related activities in Hangars 4, 5, and 6 to continue.

To begin, we want to note that, in light of an unwanted AFFF Fire Protection System discharge that occurred on August 19, 2024, in Hangar 4, which we understand to be owned by the Navy and leased to MRRA, the existing AFFF systems have been completely or partially disarmed or disabled to avoid any further unwanted AFFF system discharges.

To address why MRRA and the Navy has elected to remove the AFFF from Hangar 4 and to disarm or disable the AFFF systems in Hangars 5 & 6, is that some of the active ingredients in AFFF are per- and polyfluoroalkyl substances (PFAS). These materials are sometimes called "forever chemicals" because their carbon-fluorine bonds are believed to make them persistent in the environment and have been proven extremely difficult to remove or destroy. Due to perceived public health and environmental concerns, the Environmental Protection Agency classified the two most studied PFAS, perfluorooctane sulfonate (PFOS) and perfluorooctanoic acid (PFOA), as "hazardous substances" subject to regulation under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). Both of these substances are feared to be contained within the AFFF found at the MRRA facility. In addition to the Federal regulation, numerous states have also taken regulatory action to restrict the manufacture, sale, distribution, and/or use of AFFF due to concerns about PFAS.

Given these environmental and physical concerns, and increasing regulations, the aviation and fire protection industries, including both MRRA and Poole Fire Protection, are looking for alternative solutions for fire control and extinguishment in aircraft hangars. The aviation industry and the U.S. Department of Defense (DoD) have experienced numerous unwanted system activations and discharges of both AFFF systems and high-expansion foam systems within aircraft hangars over the years. These unwanted discharge incidents have resulted in millions of dollars of losses and cleanup costs, and in some cases, injuries, and fatalities. Therefore, the fire protection industry is now moving away from AFFF systems in hangars due to concerns outlined above.

913.829.8650 office
913.829.8690 fax
www.poolefire.com

**Poole Fire Protection**
19910 West 161st Street
Olathe, Kansas 66062

In addition to investigating this discharge, Poole Fire Protection has been retained by MRRA to perform Fire Risk Assessments (FRAs) for Hangars 4, 5, & 6 at the Brunswick Executive Airport. The focus of these FRAs is to fully understand the hazards of realistic fire scenarios occurring with each hangar bay due to the maintenance operations, service operations, repair operations, and activities performed within each aircraft hangar bay. As such, a critical component to these assessments is determining the likelihood and severity of an unwanted fuel spill and an associated fire from ongoing activities in each hangar bay.

## Hangar Use and Operations:

As a comprehensive list of operations and activities conducted within each hangar will take time to develop, thus preventing a rapid development of a through and comprehensive FRA. However, as due to the nature of the concerns at the facility, the expeditious development of an interim solution to provide adequate fire protection without leveraging the existing foam fire protection systems. Therefore, I would like to identify the current use, operations, and activities which was observed by the fire protection engineers of Poole Fire Protection during the onsite walk-throughs during the week of January 27, 2025.

**Hangar 4** was unoccupied and not being used for any aircraft maintenance, service, and repair operations, as well as associated activities; however, MRRA is having discussions with several companies to potentially lease this hangar for aircraft storage, maintenance, service, repair operations, and associated activities.

**Hangar 5** is currently divided into three separate hangar bays (North, Center, and South), each occupied by individual tenants for different uses and functions. The North Bay is operated by the Fixed Base Operator (FBO), FlightLevel Aviation BXM, primarily to store and perform light (non-hazardous) maintenance, service, and repair operations, as well as associated activities to small general aviation and experimental aircraft, and airport Ground Support Equipment (GSE). In support of these operations, it is understood that the FBO is only licensed or certified by the Federal Aviation Administration (FAA) to perform limited or light maintenance activities, all of which are considered non-hazardous from a fuel spill and fire risk perspective.

The center bay is occupied by the New England Aviation Academy, which is an aircraft flight training academy. This center hangar bay is relatively small in area compared to the north and south bays and is used to park or store small single engine aircraft, similar to that of a Cirus SR22 or a Cessna 172. It is understood that the center bay is used for storage only, and no aircraft maintenance, service, or repair activities are being performed. This bay was also being used to store a few watercrafts and other equipment, all of which appear to be in storage only, with no maintenance and repair activities being performed. Based on the prohibition of maintenance operation, the cleanliness of the hangar, and the described operations, it is understood that the risk of a fuel spill and resulting ignitable liquid fueled fire will be nearly non-existent.

The south bay of Hangar 5 is currently not being utilized for any aircraft related storage, maintenance, service, or repair operations. Rather, the south hangar bay is currently being used for the manufacturing of modular partitions and leased by Starc Systems, Inc. Therefore, this hangar bay would most appropriately be classified as an industrial occupancy with limited single-row rack storage for typically Class 3 commodities. Significant quantities of plastics or flammable/combustible liquids were not observed in the south hangar bay; therefore, a wet-pipe sprinkler system is appropriate type of fire protection for this current occupancy and level of

913.829.8650 office
913.829.8690 fax
www.poolefire.com

2 of 7

**Poole Fire Protection**
19910 West 161st Street
Olathe, Kansas 66062

hazards/commodities present. No foam fire protection appears to be required to mitigate fire hazards within this space.

**Hangar 6** is divided into two separate hangar bays (east and west bays). The east bay is leased and operated by the Concorde Jet Center to perform a variety of aircraft maintenance, service, and repair operations, as well as associated activities, including fuel cell or fuel system maintenance and service activities, and limited defueling of aircraft using an FAA approved defueling bowser. No fueling is conducted within the hangar. The aircraft are generally corporate jets or commercial/business aircraft.

The West Bay is leased to and operated by Stratton Aviation, LLC-, which is a global component service provider to the commercial aviation market. As part of these operations, it is understood that aircraft are stripped of usable or resalable components in the west bay of Hangar 6 to make the airframes ready for salvage. On some occasions, maintenance, service, and repair operations, as well as associated activities are performed on commercial aircraft, and the aircraft then returned to service.

As an integral step in the aircraft salvage process, prior to the removal of aircraft components, the majority of the fuel is generally removed from the aircraft prior to their entry into the hangar, and any residual fuel would be removed using a bowser inside the aircraft. It is understood that some residual fuel may be required for some specific maintenance, service, repair and salvage related operations and activities. The removal of fuel outside the hangar, before entry, significantly reduces and essentially eliminates the risk of an unwanted fuel spill and subsequent fire.

Additionally, the University of Maine at Augusta (UMA), Uncrewed Aircraft Systems ("Drone") Department also has a small portion of the west bay, which typically contains one-to-two small general aviation type of aircraft. These aircraft are used for training purposes and lab classes with UMA students. Even though the aircraft may have fuel in them, and the Drone Department push them outside and run them on a somewhat regular basis, the aircraft maintenance, service, or repair operations and activities are limited to training activities by qualified and certified instructors. The quantity of fuel (typically aviation gas – Class I flammable liquid) in the aircraft is generally less than 50 gallons per Dr. Daniel Leclair, Director of Education & Research with UMA. It is understood that these aircraft, and the general aviation and experimental aircraft within the FBO space of Hangar 5 are the only aircraft that contain a flammable liquid fuel while the other spaces in all hangars are understood to use combustible liquid fuels.

## Temporary Interim Solutions:

Based on the findings during the aforementioned site visit, it is understood that the existing AFFF systems can remain disarmed or disabled due to the safeguards currently employed at the facility. Therefore, below are the temporary interim solutions for each respective hangar. These temporary interim solutions have been prepared and reviewed by Maine licensed fire protection engineers, with extensive experience in aircraft hangars; the operations, hazards, and risks within hangars; and the required fire protection systems.

**Hangar 4:** The hangar bay is currently protected with an automatic wet-pipe sprinkler system with a design density of 0.17 gpm/ft$^2$ over the most remote 15,000 ft$^2$. The previous AFFF monitors remain in the hangar, but have been disconnected from the fire protection systems within the facility as the piping blind-flanged off at each monitor location rendering them

913.829.8650 office
913.829.8690 fax
www.poolefire.com

**Poole Fire Protection**
19910 West 161st Street
Olathe, Kansas 66062

inoperable. The AFFF concentrate has been removed from the tanks, and the foam pumps have been locked and tagged out-of-service. It is understood that the AFFF concentrate piping has been flushed/rinsed to remove residual AFFF concentrate. The AFFF monitor nozzle deluge systems (3 zones) have their control valves closed, and are considered isolated or out-of-service as mentioned above. This hangar bay has six (6) Honeywell UV/IR Flame Detectors and spot-type heat detectors at the ceiling, which are both understood to be in service and still being monitored by the fire alarm/detection system, but the Honeywell UV/IR detectors have been bagged or covered to prevent them from going into alarm. A series of manual pull stations are currently located throughout the hangar bay, both for the activation of the building's fire alarm system as well as the activation of the AFFF system. However, it is understood that as components of the AFFF system were removed from the hangar, such as the AFFF hose stations, or disabled in the case of the monitor nozzles, these pull stations will only serve to activate the building fire alarm system.

While the hangar is currently vacant, if **Hangar 4** were to be used or leased for: 1) aircraft storage; 2) aircraft limited or light maintenance, service, or repair operations or activities, excluding any hazardous activities, such as fuel cell or fuel system work; or 3) heavy maintenance, including fuel cell or fuel system work with drained and sumped aircraft fuel cells, the **temporary interim solution** would consist of the following:

A   Maintain the overhead wet-pipe sprinkler system in service with water only;

B   Remove the covers and bags from the flame detector and configure them to transmit an early warning supervisory signal upon the first UV/IR detector in alarm. Upon the second UV/IR detector going into alarm, the system would notify the fire department and building occupants;

C   Add least one 300-lb. ABC wheeled dry chemical extinguisher in the hangar bay;

D   All hangar bay operations personnel must be trained on the use of both wheeled and portable fire extinguishers; and

E   Maintain the existing fire alarm system including the hangar manual pull stations, heat detectors at the ceiling, UV/IR flame detectors as discussed above, audible/visual appliances and the monitoring by the UL Listed Central Station (Centralarm Monitoring, Inc.).

**Hangar 5:** The hangar bays are currently protected with an automatic AFFF closed-head sprinkler system have a design density of 0.16 gpm/ft$^2$ over the most remote 14,500 ft$^2$, with the exception of the south hangar bay. The south bay, which is currently being used for manufacturing, is protected with a sprinkler system having a density of 0.16 gpm/ft$^2$ over the most remote 14,500 ft$^2$, and the AFFF concentrate valves have been closed. This condition is acceptable as explained above for this manufacturing occupancy due to the absence of flammable liquids within the space.

The previous AFFF monitors, in all bays, have been bagged and isolated from service by closing the AFFF concentrate valves and water supply valves to each monitor system deluge valve. The AFFF concentrate tanks are maintained full and the AFFF concentrate pumps remain in service to supply AFFF to the overhead sprinkler system in the north and center hangar bays. Therefore, activation of the overhead sprinkler systems in these hangar bays would discharge AFFF solution in response to a fire large enough to cause the overhead closed

913.829.8650 office
913.829.8690 fax
www.poolefire.com

4 of 7

**Poole Fire Protection**
19910 West 161st Street
Olathe, Kansas 66062

sprinklers to activate. All AFFF monitor nozzle systems (3 zones/bays) are considered isolated and out-of-service as mentioned above.

Each of the three hangar bays have Det-Tronics IR flame detectors and spot-type heat detectors, which are the Viking Model C-1 Thermostatic Releases, installed. These Viking Model C-1 Thermostatic Releases are a rate-of-rise releasing device for use on hydraulic and pneumatic release systems controlling operation of Viking deluge valves on deluge or preaction systems. When subjected to a temperature rise greater than 15 degrees per minute, the Model C-1 Thermostatic Release opens to allow pressure in the release system to escape, in turn activating or releasing the deluge valve to allow water to flow from the overhead closed-head sprinkler system once the individual sprinklers activate/release. Since this south hangar bay is used for manufacturing and not aircraft maintenance, service, or repair, the IR flame detectors can remain bagged and out-of-service.

The south bay of **Hangar 5**, or the manufacturing portion, can remain as is with a water only system (no changes required) since the south bay is not being used for any aircraft stored, maintenance, service, or repair.

As the **temporary interim solution** for the center bay of Hangar 5, the AFFF overhead closed-head sprinkler system can be converted into a standard closed-head sprinkler system. The existing system will be modified by closing/isolating the AFFF concentrate valves, such that upon system activation, AFFF concentrate will NOT be added/proportioned into the system and only water will be discharged from the sprinkler system in this hangar bay. The fire alarm system shall remain in service including the manual pull stations, Viking Model C-1 Thermostatic Releases at the ceiling, audible/visual appliances and the monitoring by the UL Listed Central Station (Centralarm Monitoring, Inc.). Since this center hangar bay is used for storage of small general aviation aircraft and no maintenance is currently preformed within the hangar, the Det-Tronics IR flame detectors can remain bagged and out-of-service.

The north bay of Hangar 5, which is where the FBO operations are performed includes: aircraft storage, and aircraft limited or light maintenance, service, or repair operations, or activities, excluding any hazardous activities, such as fuel cell or fuel system work. The **temporary interim solution** for the north bay of Hangar 5 would be to:

A Convert the AFFF overhead closed-head sprinkler system into a standard closed-head sprinkler system by closing/isolating the AFFF concentrate valves, so upon system activation, AFFF concentrate will NOT be added/proportioned into the system and only water will be discharged;

B Remove the bags and/or covers from the IR flame detectors and configure them to transmit an early warning supervisory signal upon the first IR detector in alarm Upon a second IR detector going into alarm, the system would notify the fire department and building occupants;

C Add least one 300-lb. ABC wheeled dry chemical extinguisher in the hangar bay;

D All hangar bay operations personnel must be trained on the use of both wheeled and portable fire extinguishers; and

E Maintain the existing fire alarm system for all three hangar bays (south, center, and north) including the hangar manual pull stations, Viking Model C-1 Thermostatic

913.829.8650 office
913.829.8690 fax
www.poolefire.com

5 of 7

**Poole Fire Protection**
19910 West 161st Street
Olathe, Kansas 66062

Releases at the ceiling, Det-Tronics IR flame detectors as discussed above (for the north bay only), audible/visual appliances and the monitoring by the UL Listed Central Station (Centralarm Monitoring, Inc.).

**Hangar 6:** The hangar bays (both east and west) are currently protected with an automatic AFFF closed-head ceiling sprinkler system with a design density of 0.16 gpm/ft$^2$ over the most remote 15,000 ft$^2$, and AFFF grate nozzle systems (6 zones – 3 in each bay) which was design to provide a AFFF solution density of 0.10 gpm/ft$^2$ over the aircraft storage and service area of the bay. Currently, the AFFF concentrate valves and water supply valves to both the automatic AFFF closed-head ceiling sprinkler systems and AFFF grate nozzle systems remain open and are considered in-service and operational.

Both hangar bays have Det-Tronics X3301 triple IR flame detectors and spot-type heat detectors. The triple IR flame detectors are only located on the hangar wall, which separates the support areas from the hangar bay, and the spot-type heat detectors are located at the ceiling.

Since operations within both bays of Hangar 6 include a variety of aircraft maintenance, service, repair, and/or salvage operations, and including fuel cell or fuel system maintenance and service activities, including defueling of aircraft using an FAA Approved defueling bowser, the **temporary interim solution** for be consistent throughout the entire hangar. The temporary interim solution for **Hangar 6** would be to:

A   Convert the AFFF overhead closed-head sprinkler system into a standard closed-head sprinkler system by closing/isolating the AFFF concentrate valves, so upon activation, AFFF concentrate will NOT be added/proportioned into the system and only water will be discharged;

B   Convert the AFFF grate nozzle system into a water-only grate nozzle system by closing/isolating the AFFF concentrate valves, so upon activation, AFFF concentrate will NOT be added/proportioned into the system and only water will be discharged from the grate nozzles;

C   Remove the bags and/or covers from the triple IR flame detectors and configure them to transmit an early warning supervisory signal upon the first triple IR detector in alarm. Upon the second triple IR detector going into alarm, the system would notify the fire department and building occupants;

D   Defueling will not be permitted inside the hangar during this interim period, all defueling must be performed outside the hangar;

E   Add least one 300-lb. ABC wheeled dry chemical extinguisher in each hangar bay;

F   All hangar bay operations personnel must be trained on the use of both wheeled and portable fire extinguishers; and

G   Maintain the existing fire alarm system for both hangar bays (east and west) including the hangar manual pull stations, heat detectors at the ceiling, Det-Tronics triple IR flame detectors as discussed above, audible/visual appliances and monitoring by the UL Listed Central Station (Centralarm Monitoring, Inc.).

913.829.8650 office
913.829.8690 fax
www.poolefire.com

6 of 7

**Poole Fire Protection**
19910 West 161st Street
Olathe, Kansas 66062

It is important to understand that these temporary interim solutions as described above for each hangar bay of each hangar should be implemented immediately and shall remain in place until the Fire Risk Assessment is completed and the recommendations of the FRA is fully designed, installed, and commissioned with all design and field changes overseen by a Maine licensed Fire Protection Engineer with at least 5 years of experience with NFPA 409 and Aircraft Hangars.

If you have any questions about my observations, conclusion, and temporary interim solutions, please contact me at my office at 913-747-2050 or on my cell phone at 913-208-2596.

Sincerely,

John W. Poole, III, PE, FSFPE ("Jack")
Principal
Poole Fire Protection, Inc.

Peer Reviewed By,

Nicholas Brondum
Fire Protection Engineer

Andrew W. Poole, PE
Director of Engineering

CC: Julia Henze, Town Manager – Town of Brunswick
Gregory J. Day, Fire Chief – Brunswick Fire Department
Josh Shean, Deputy Chief – Brunswick Fire Department
Steve Levesque, Acting Executive Director – Midcoast Regional Redevelopment Authority
Jeffry Jordan, Deputy Director – Midcoast Regional Redevelopment Authority
Marty McMahon – Navy BRAC Office (Hangar 4)
James Nall, Airport Manager – FlightLevel Aviation BXM (Hangar 5)
Paul A. Richards, Partner – New England Aviation Academy (Hangar 5)
Chris Vickers, President & CEO – STARC Systems, Inc. (Hangar 5)
Shaun Halligan, Director of Maintenance – Concorde Jet Center (Hangar 6)
(Raza) Mohsin Raza, VP of Technical Services – Stratton Aviation, LLC (Hangar 6)
Daniel M. Leclair, Director Education & Research – University of Maine at Augusta (Hangar 6)

913.829.8650 office
913.829.8690 fax
www.poolefire.com

7 of 7

**Poole Fire Protection**
19910 West 161st Street
Olathe, Kansas 66062